El Pueblo de Puerto Rico, demandante y apelado, *v.* Valentín Rodríguez Martínez, acusado y apelante.

Núm. 10047.—*Sometido:* Junio 8, 1943. *Resuelto:* Junio 18, 1943.

*Luis Mercader,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El apelante fué acusado de asesinato en segundo grado, convicto de homicidio voluntario y sentenciado a la pena de cuatro años de presidio.

Basa su recurso de apelación en tres señalamientos de error, los que vamos a exponer y considerar en el mismo orden en que se exponen en su alegato.

█ Que la teoría de la acusación de asesinato fué cambiada por la de homicidio voluntario, sin previa enmienda autorizada por la corte y sin notificación al acusado.

Este señalamiento no encuentra apoyo alguno en el récord ante nos. No aparece en el mismo exposición de teoría alguna, ni por el fiscal ni por la defensa. El fiscal procedió a presentar la evidencia de que disponía para sostener la acusación de asesinato en segundo grado, sin hacer exposición alguna en cuanto a la teoría que se proponía sostener. La defensa presentó la prueba de que disponía y que tendía a establecer la defensa propia. Oída la prueba de una y otra parte y las instrucciones de la corte, el jurado rindió un veredicto de homicidio voluntario. No tiene, pues, de qué quejarse el acusado. Además, el fiscal está facultado para modificar sus conclusiones, rebajando el grado del delito originalmente imputado en la acusación, sin necesidad de enmendar ésta ni de obtener previamente el permiso de la corte. Esa práctica en nada puede perjudicar a un acusado, pues si éste tenía una defensa buena y suficiente en contra de la

acusación de asesinato, esa misma defensa podía interponerla contra cualquier otra calificación inferior del mismo hecho que se le imputara en la acusación original.

■ 2. Que durante la vista del caso el fiscal y la corte hicieron ciertas manifestaciones prejuiciadas, poniendo en tela de juicio, ante el jurado, la inocencia del acusado.

(1) Dolores Martínez, primera testigo de cargo, declaró que no vió quién mató a Teodoro Nieves porque "yo estaba en el centro de casa y no puedo decir lo que no veo". Intervino entonces el fiscal, diciendo: "Esa es la historia que trae y quiero que conteste mi pregunta. Me habla de un muerto, ¿quién era el muerto?" Contestó la testigo: "Teodoro Nieves". Preguntó el fiscal: "¿Quién lo mató?" Y la testigo repitió de nuevo: "No ví quién lo mató porque estaba en el centro de casa."

Del récord no aparece que la defensa formulara objeción alguna en contra del precedente interrogatorio. Además, no creemos que el acusado haya sufrido perjuicio alguno, toda vez que la testigo nada dijo que pudiera servir para conectarle a él con la muerte de Nieves.

■ (2) El apelante, sin haber formulado objeción alguna o tomado excepción, se queja del siguiente incidente:

El testigo de cargo Sergio Rivera Vélez había declarado que vió a Teodoro Nieves que venía corriendo y detrás venía el acusado; que el acusado haló por un hierro e hirió a Nieves y entonces éste le tiró piedras al acusado; que después de ser herido, Nieves echó a correr y el acusado se le fué detrás, subiendo ambos por la puerta de la casa de Dolores Martínez y apearon por la puerta de la cocina; y al apear, Nieves venía botando sangre y cayéndose, y cuando fueron a buscarlo para llevarlo al hospital ya había muerto. Continuó entonces el fiscal interrogando al testigo en la siguiente forma:

"P. ¿Vió cuando el acusado lo puyó con el puñal?—Yo lo ví cuando lo hirió primero, poca cosa, en un brazo.

"P. ¿Declaró bajo juramento ante el Fiscal?—Sí, señor.

"Hon: Juez. Está obligado a decir la verdad. Si declaró la verdad antes tiene que declarar esa verdad aquí.

"P. ¿Vió cuando lo puyó con el puñal?—Cuando lo hirió sí."

No encontramos que la corte cometiera error alguno en el precedente interrogatorio. El propósito fundamental del juicio es el establecimiento de la verdad. Es el juez que preside la vista el llamado a dirigir y controlar la presentación de la prueba y a impedir que un testigo, a sabiendas, falte a su juramento de decir la verdad. La exhortación al testigo para que la dijera y recordarle su declaración prestada en la investigación de los hechos, en nada pudo perjudicar al acusado, pues no obstante la intervención del juez y del fiscal, el testigo se reafirmó en su declaración de que él sólo presenció cuando el acusado hirió al interfecto en el brazo.

■ 3. Que la evidencia ofrecida por el fiscal no es suficiente para justificar el veredicto; y que la evidencia en conjunto demuestra que el acusado actuó en defensa propia.

Hemos leído cuidadosamente la prueba de ambas partes. La del Pueblo tendió a demostrar que después del primer encuentro entre el acusado y el interfecto, éste, que ya había sido herido de puñal en el antebrazo derecho, tiró dos piedras al acusado y echó a correr, siendo seguido por el acusado, quien llevaba un puñal. Subieron ambos por la puerta de la casa de Dolores Martínez y salieron por la de la cocina, estando Teodoro Nieves mortalmente herido. La autopsia reveló que el interfecto había recibido una herida en la región hipocondríaca izquierda al nivel del octavo espacio intercostal, interesando el estómago y el corazón y mortal por necesidad; otra herida en la región umbilical, de carácter leve; y otra superficial y leve en el antebrazo derecho.

La testigo de defensa, Milagros Martínez, se limitó a declarar con referencia al comienzo de la reyerta entre el acusado y su víctima. Nada supo de lo ocurrido más tarde, pues según declaró, ella se puso nerviosa, empezó a gritar y se la llevaron a una casa y no vió nada más.

Declaró el acusado que al encontrarse con Nieves éste le maltrató de palabras y le dió en la cara; que entonces pelearon; que desde hacía más de un año Nieves tenía encono contra él y cuando se encontraban le obligaba a pelear; que algunas personas intervinieron, los separaron y retiraron a Nieves; que éste se soltó y volvió hacia él y volvieron a pelear; que los separaron por segunda vez y entonces Nieves le tiró dos piedras, dándole una de ellas por debajo del brazo derecho; que volvieron a agarrarse y entonces él le arrebató a Nieves un arma que éste llevaba en el seno y lo hirió con ella; que entonces corrió a buscar a las muchachas y al llegar a su casa tuvo noticias de que Nieves había muerto; que no trató de tirarle a matar; que lo hirió de frente y en la lucha, para quitárselo de encima, pues Nieves era más fuerte que él y lo tenía dominado.

El conflicto que resulta de toda la prueba fué resuelto por el jurado en contra del acusado. Evidentemente el jurado dió crédito a los testigos de cargo y llegó a la conclusión de que el acusado dió muerte a su adversario después que éste se había retirado huyendo del lugar donde ocurrió la lucha. Estando esa conclusión sostenida por prueba que consideramos suficiente, no estaría justificada nuestra intervención con la discreción que la ley concede al jurado como únicos jueces de los hechos.

*La sentencia recurrida debe ser confirmada.*